# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:18-cv-00164-MR

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, ) ) ) Plaintiff, ) ) vs. ) ) STELLETTA SMITH-HOWELL and ) TRAVIS FLACK, ) ) Defendants. ) ) and ) ) STELLETTA SMITH-HOWELL and ) TRAVIS FLACK, ) ) Cross-Claimants, ) ) vs. ) ) TRAVIS FLACK, ) ) Cross-Defendant. ) ) _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on Stelletta Smith-Howell's Motion for Default Judgment [Doc. 31].

## I. PROCEDURAL BACKGROUND

On June 12, 2018, Metropolitan Life Insurance Company ("MetLife") filed a Complaint in Interpleader with respect to certain life insurance benefits which became payable upon the death of Lester Flack, Jr. ("Decedent"). [Doc. 1]. The Decedent was an employee of Daimler Trucks North America, LLC ("Daimler") and a participant in the Daimler Group Life Insurance Program ("the Plan"). [Id.]. The Plan was an employee welfare benefit plan sponsored by Daimler, governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and funded by a group life insurance policy issued by MetLife. [Id.].

MetLife identified two potential competing claimants to the Plan benefits: Stelletta Smith-Howell ("Smith-Howell"), and the Decedent's son, Travis J. Flack ("Flack"). [Id.]. Smith-Howell claimed that she was entitled to 95% of the funds and Flack was entitled to 5% of the funds, while Flack claimed that he was entitled to 95% of the funds and Smith-Howell was entitled to 5% of the funds.

On June 12, 2018, MetLife filed a Motion for Receipt and Deposit of Funds with respect to $165,000.00 in disputed funds. [Doc. 5]. This Court granted MetLife's Motion on June 18, 2018. [Doc. 7]. On June 19, 2018, MetLife filed an Amended Complaint, reflecting therein that $3,300.00 of the

2

benefits at issue had been distributed to Flack as his undisputed 5% interest in the benefits, leaving a balance of $161,700.00, plus interest, in disputed funds. [Doc. 8]. On July 9, 2018, this Court granted MetLife's Motion for Amended Order on Receipt and Deposit of Interpleader Funds. [Doc. 10]. On the same date, MetLife deposited $163,321.43 with the Clerk of this Court.

MetLife served the original pleadings by certified mail, which were received by Smith-Howell on June 20, 2018. [Docs. 11, 11-1]. Thereafter, MetLife served the amended pleadings, which were received by Smith-Howell on July 10, 2018. [Docs. 11, 11-2]. Smith-Howell failed to timely file a responsive pleading. MetLife likewise served the original pleadings and amended pleadings on Flack by certified mail, and such pleadings were received by Flack on June 21 and 22, 2018, respectively. [Docs. 11, 11-3, 11-4]. Flack failed to timely file a responsive pleading.

On October 16, 2018, MetLife filed a Request for Entry of Default against Smith-Howell and Flack. [Doc. 14]. On October 17, 2018, the Clerk of Court entered default against Smith-Howell and Flack. [Doc. 15]. On December 7, 2018, MetLife filed a Motion for Default Judgment [Doc. 17] and an Application for Award of Attorneys' Fees and Costs [Doc. 19], seeking the entry of a default judgment under Rule 55(b)(1) of the Federal Rules of Civil

Procedure and the award of attorneys' fees and costs. On January 22, 2019, the Court entered an Order granting MetLife's Motion for Default Judgment and MetLife's Application for Award of Attorneys' Fees and Costs. [Doc. 22]. The Court entered a default judgment against Smith-Howell and Flack, dismissed MetLife from the action, enjoined Smith-Howell and Flack from instituting any action against MetLife, Daimler Trucks North America, LLC, or the Daimler Group Life Insurance Plan for the recovery of deposited interpleader funds, and awarded MetLife $9,350.82 in attorneys' fees and costs from the deposited interpleader funds. [Id.].

On August 19, 2019, Smith-Howell filed a Motion to Set Aside Default Judgment and for Leave to File Answer to Complaint [Doc. 24]. On November 26, 2019, the Court entered an Order granting Smith-Howell's motion, setting aside the Default Judgment, and reopening the case. [Doc. 27].

On December 4, 2019, Smith-Howell filed an "Answer to Amended Complaint in Interpleader and Verified Crossclaim" asserting a cross-claim against Flack seeking monetary and declaratory relief under ERISA regarding the beneficiary designations. [Doc. 28]. Flack did not file a responsive pleading within the time required by the Federal Rules of Civil Procedure. On February 5, 2020, Smith-Howell filed a Motion for Entry of

Default against Flack. [Doc. 29]. On February 13, 2020, the Clerk of Court entered default against Flack. [Doc. 30]. On February 14, 2020, Smith-Howell filed this Motion for Default Judgment against Flack. [Doc. 31]. Flack did not respond to this Motion.

## II.  STANDARD OF REVIEW

"To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)." Hayhurst v. Liberty Int'l Underwriters, No. 5:08-cv-5347, 2009 U.S. Dist. LEXIS 5347, at *2 (N.D.W.Va. Jan. 29, 2009); see Eagle Fire, Inc. v. Eagle Integrated Controls, Inc., No. 3:06-cv-264, 2006 U.S. Dist. LEXIS 41054, at * 14, 2006 WL 1720681 (E.D. Va. June 20, 2006) ("The entry of default is a procedural prerequisite to the entry of a default judgment."). Rule 55(a) states that the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After the clerk enters default, the party may seek a default judgment under Rule 55(b)(1) or (2), depending on the nature of the relief sought.  Rule 55(b) "authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982).  By such a default, a defendant admits

5

the well-pleaded factual allegations in the claim against them. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001).

## III.  SMITH-HOWELL'S FACTUAL ALLEGATIONS

The well-pleaded factual allegations of Smith-Howell's cross-claim are deemed admitted by virtue of Flack's default. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). The following is a summary of the relevant and admitted facts.

In July 2015, the Decedent was diagnosed with inoperable terminal cancer. [Id.]. The Decedent maintained two life insurance policies as well as a 401k retirement account. [Id. at 6]. After receiving his diagnosis, the Decedent filed Beneficiary Designations with MetLife naming Smith-Howell as a 95% beneficiary and Flack as a 5% beneficiary of the two life insurance policies. [Id.; see also Doc. 28-7]. Smith-Howell and the Decedent were involved in a romantic relationship. [Doc. 28 at 5]. Flack is the Decedent's only son. [Id.]. The Decedent told Smith-Howell that he did not give Flack a larger portion of the benefits because he did not want Flack to receive such a large sum of money. [Id.].

On June 19, 2016, the Decedent was admitted to the hospital and received a poor prognosis. [Id. at 7]. Smith-Howell claims she was with the Decedent the entire time he was at the hospital, other than a single quick trip

home. [Id]. Smith-Howell had possession of the Decedent's telephone and wallet and the Decedent did not have access to a telephone or a computer while he was in the hospital. [Id]. On June 20, 2016, while the Decedent was hospitalized, Flack contacted MetLife and changed the Beneficiary Designations on the Decedent's life insurance policies to make himself the 95% beneficiary and Smith-Howell the 5% beneficiary. [Id. at 8].

The Decedent was still hospitalized when he passed away on June 24, 2019. [Id.]. When Smith-Howell contacted MetLife to pay for the Decedent's funeral expenses, she was informed of the changes to the Beneficiary Designations that were made on June 20. [Id.]. Smith-Howell told MetLife that the Decedent was incapable of making those changes at that time and told MetLife that she knew the Decedent did not make those changes. [Id.]. MetLife nevertheless denied her claim for benefits, telling Smith-Howell that it could only pay her 5% of the Plan benefits consistent with the June 20 Beneficiary Designations. [Id.].

On August 16, 2016, Smith-Howell submitted a written dispute to MetLife asserting that the changes made to the Beneficiary Designations on June 20 were fraudulent. [Id.]. MetLife reviewed Smith-Howell's claim and wrote to Smith-Howell and Flack to inform them that it was depositing the funds with the Court. Prior to making that deposit, MetLife dispersed 5% of

7

the Plan proceeds to Flack because that represented his uncontested share of the benefits. [Id. at 9].

Later, Smith-Howell contacted Flack and discovered that Flack was responsible for the changes to the Beneficiary Designations that were made on June 20. [Id. at 8]. Flack made those changes without the knowledge or authorization of the Decedent. [Id.]. Flack acknowledged to Smith-Howell that it "was wrong" for him to change the Beneficiary Designations. [Id.].

## III. DISCUSSION

Smith-Howell alleges that the June 20 beneficiary change should be voided because Flack contacted MetLife and caused the June 20 beneficiary change to be made through "fraudulent" acts. [Doc. 28 at 8].

Under Section 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B), Smith-Howell may bring a civil action "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." Generally, "plan administrations look solely at 'the directives of the plan documents' in determining how to disburse benefits." Boyd v. Metro. Life Ins. Co., 636 F.3d 138, 140 (4th Cir. 2011) (citing Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285, 300 (2009)). This general rule, however, does not apply "where the validity of a plan document itself is in

question." Tinsley v. Gen. Motors Corp., 227 F.3d 700, 704 n.1 (6th Cir. 2000). Where, as here, a party contests the validity of a plan document, the Court must go beyond the plan documents to determine how benefits should be disbursed. Id.

ERISA expressly preempts "any and all state law claims in so far as they may now or hereafter relate to any employment benefit plan." 29 U.S.C. § 1144(a); see also Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 240 (2d Cir. 2014) (recognizing that "ERISA expressly preempts any state law that 'relate[s] to any employee benefit plan'"). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 114 (2d Cir.2008) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97 (1983)). Courts have "held that claims touching on the designation of a beneficiary of an ERISA-governed plan fall under ERISA's broad preemptive reach and are consequently governed by federal law." Tinsley, 227 F.3d at 704 (citing Metropolitan Life Ins. Co. v. Marsh, 119 F.3d 415, 420 (6th Cir. 1997); Metropolitan Life Ins. Co. v. Pressley, 82 F.3d 126, 129 (6th Cir. 1996); McMillan v. Parrott, 913 F.2d 310, 311 (6th Cir.1990)). As such, the question of whether Smith-Howell is entitled to the benefits at issue here is preempted by ERISA and is governed by federal law. Id. For claims

9

governed by federal law under ERISA, the Court must "look to either the statutory language or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law." McMillan v. Parrott, 913 F.2d 310, 311 (6th Cir.1990).

ERISA does not mention misrepresentations, fraud, or "contain any provisions regulating the problem of Beneficiary Designations that are forged, the result of undue influence, or otherwise improperly procured[.]" Tinsley, 227 F.3d at 704. Likewise, federal common law does not provide guidance regarding fraudulent designations of life insurance beneficiaries. Id.; see also Am. United Life Ins. Co. v. Arthur, No. 3:14-CV-00586-GCM, 2016 WL 165034, at *2 (W.D.N.C. Jan. 14, 2016) (Mullen, J.). Because there is "no established body of federal common law to apply" with regard to improperly procured beneficiary designations, the Court must look "to general state law principles for guidance." Id.[1]

"To state a valid claim for fraud under North Carolina law, a party must allege a false representation or concealment of a material fact that: (1) was reasonably calculated to deceive; (2) was made with the intent to deceive;

---

[1] Arguably, state law is controlling rather than simply providing instruction as to the applicable federal common law principle. The authority of the federal courts to promulgate "federal common law" is very limited. Rodriguez v. FDIC, ___ U.S. ___ No. 18-1269 (Feb. 25, 2020). In this case it is irrelevant as to whether state law is binding or merely instructive, as both yield the same result.

10

(3) did in fact deceive the party; and (4) resulted in damages to the party." Willis v. Tritle, No. 1:17-CV-00345-MR, 2019 WL 3072707, at *6 (W.D.N.C. July 12, 2019) (Reidinger, J.) (citing Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007)).

Here, Smith-Howell alleges that Flack was "the individual who contacted MetLife and changed the beneficiary designation on the life insurance policies" and did so "without the knowledge or authorization of [the Decedent]." [Doc. 28 at 8]. Smith-Howell further alleges that Flack's actions were "fraudulent[,]" and that Flack admitted that his actions were "wrong." [Doc. 28 at 8].

Taking Smith-Howell's allegations as true, Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001), the Court concludes that she has established that the June 20 beneficiary change was a product of fraud. Flack either falsely represented that he had the authority to change the Decedent's Beneficiary Designations or concealed the fact that he did not have such authority when he made the changes on June 20. Flack's misrepresentations were reasonably calculated to deceive and were made with the intent to deceive, shown by the fact that Flack later indicated that he knew changing the designation "was wrong" and that Flack never had authority to change the Beneficiary Designations. [Doc. 28 at 8]. Flack's

11

misrepresentation deceived MetLife into changing the Beneficiary Designations and resulted in damages to Smith-Howell by causing her to lose her rights to 90% of the Plan proceeds. That is sufficient to show that the June 20 changes to the Beneficiary Designations were effectuated through fraud and should therefore be voided.

## IV. CONCLUSION

The Court concludes that the entry of a default judgment is appropriate here because the June 20, 2016 Beneficiary Designations were effectuated through fraud and are therefore void. As such, the Decedent's Beneficiary Designations that were in effect prior to June 20, 2016 control the disbursement of the Plan proceeds. Under those Beneficiary Designations, Smith-Howell is entitled to 95% of the Plan proceeds.[2]

## O R D E R

**IT IS, THEREFORE, ORDERED** that Stelletta Smith-Howell's Motion for Default Judgment [Doc. 31] is **GRANTED**, and a judgment of default is hereby entered against Travis Flack on her cross-claim.

**IT IS DECLARED** that:

(1) The June 20, 2016 Beneficiary Designations are void.

(2) The Beneficiary Designations that were in place before June 20,

---

[2] Flack has already received his 5% share. [Doc. 28 at 9].

2016 control the disbursement of the Plan proceeds. Consistent with those Designations, Smith-Howell is a 95% beneficiary of the Plan proceeds and Flack is a 5% beneficiary of the Plan proceeds.

**IT IS FURTHER ORDERED** as follows:

(1) All interpleader funds currently held by the Clerk of Court and any interest on those funds is hereby **RELEASED** and shall be distributed to Smith-Howell.

(2) The Clerk of Court is respectfully requested to close this civil action.

**IT IS SO ORDERED.**

Signed: February 28, 2020

Martin Reidinger
United States District Judge